The next case on for argument is International Brotherhood versus Charter Communications. Wait just a second, Mr. Byington, a few people are exiting and then we can give you our . . . no, you can stand up there, but we're not going to start your clock yet. Please, go ahead. Morning, Your Honors. If it may please the Court, John Byington, attorney for the appellant, Local 3. The district court here improperly ignored the conclusive holding of the NLRB that the parties never reached agreement on a successor collective bargaining agreement after their CBA expired in March of 2013. There was no CBA in place that restricted the initial three days of strike four years later in March of 2017 as challenged by Charter in this case. There was no CBA that provided for binding arbitration in exchange for a hearing. In April of 2015, Your Honors, after several days of trial, it was determined, quote, there was no meeting of the minds and no contract between Local 3 and Charter's predecessor, Time Warner Cable of New York City, for a successor CBA after March of 2013. That was by Administrative Lord Judge Stephen Fish of the NLRB after several days of evidentiary hearing in an NLRB trial that was hotly litigated by Charter's predecessor. In October 2015, six months later, the NLRB affirmed, the board ruled that the parties, quote, mistakenly believed they had reached an agreement on March 28, 2013, but the parties had not, quote, reached a meeting of the minds regarding all material terms of their successor contract. And then what happened? And then on... And then what happened? I mean, there's an employer, there are employees, they continue to work, correct? They did, Your Honor. Under what terms? Under the status quo of the agreement that was in place. That had been in... Well, you mean the agreement that was not in place? Well, what happened, Your Honor, was in 2015, when ALJ Fish determined there was no contract, the union withdrew all arbitration demands, ceased participating in arbitrations, and offered to negotiate, asked the company to negotiate. They refused. They actually filed a charge with the NLRB alleging that the union's request to negotiate was an unfair labor practice, was an attempt to terminate or modify an existing collective bargaining agreement, or, and they put this in the charge, if there was no collective bargaining agreement in effect, a withdrawal from good faith bargaining. That was summarily dismissed. Basically, if there's no collective bargaining agreement in effect, that doesn't mean that there's no agreement in effect. I mean, people work, they have an entitlement to get paid, they have an understanding as to what their... They do, Your Honor. ... contract rights are, and you continue to get the benefit of the agreement that people thought they entered into, but didn't, correct? The company has an obligation to maintain the status quo, even in the absence of an agreement, to negotiate in good faith. After the union requested negotiations, the company refused and did nothing for three years. In the meantime, the union did not participate in arbitrations, and quite frankly, Your Honor, the Charter's argument... The union had participated in arbitrations before. Before there was... It was under the delusion that there was a contract. Well, as the NLRB held... It was under the delusion that there was a contract. Correct. By both parties, as the NLRB held, there was no meeting of the minds, there was really no contract, and both parties mistakenly believed there was. And so people continued on... And then after... And people continued on applying the status quo. Yes, correct. And the status quo was based upon the terms of the contract, the CBA, that people thought they had entered into. That had expired, Your Honor. But that they thought they had entered into. That they thought that they had entered into, and quite frankly... Therefore, they continued to observe the terms of the contract they thought they had entered into but didn't, but that included an arbitration clause. But the parties did not continue to adhere to arbitrations, which is for the benefit of the union in exchange for, and this is universally recognized, it's the quid pro quo, for the benefit of the union in exchange for an agreement not to strike. So without, the union endured two years without binding arbitration. And for the company to maintain that this was a... Let me stop you there. The union endured for two years without binding arbitration. But there was never an occasion to determine whether there was binding arbitration. That issue arose when you got in front of Judge Weinstein, and Judge Weinstein said, no, you did have binding arbitration, you just never knew it, and go back and arbitrate. Well, no, Your Honor, because the NLRB had found that there was no contract. And there wasn't, the parties withdrew from arbitrations. The union could not resolve grievances through binding arbitration for two years. And for the company to, there was no agreement. The union, if they tried, they would have adopted the agreement. They never tested whether they could go to binding arbitration. There was no agreement which required that they do so. And in the absence of an agreement for arbitration, two years later, for the company to say that the union had this nefarious plan to wait two years to endure the absence of a binding arbitration process to resolve employee grievances, and there were plenty of them, to wait two years to strike for three days in March of 2017 is quite frankly ludicrous. And Judge Weinstein didn't find that there was an agreement, a full agreement here. Judge Weinstein found that there was an adoption by conduct, an implicit agreement that only with respect to the arbitration and the no-strike provision. That's the, and it was based on the exact same evidence that the NLRB found. There was no contract. And the NLRB has, in no less than five decisions, stated that the last agreement that was in place here expired in March of 2013. Just a few months ago, in this court, the NLRB represents again to this court in an appeal, in a brief in an appeal, that the party's most recent collective bargaining agreement expired on March 31, 2013. The board states that the expired 2009 to 2013 CBA contained an arbitration and no-strike provision, but, quote, the parties bargained but did not agree to a successor contract. That's in the NLRB's brief in the appeal before this court, case number 182323, filed on March 17, 2019.  So for four years, the NLRB has said the last agreement was in March of 2013. And for charter to say that the NLRB really meant something else and has been affirming and reaffirming dicta all these past four years just simply can't be reconciled with the multiple proceedings in which no contract finding has been restated and affirmed in no uncertain terms. The court's finding that there was just and only an agreement by adoption— If, in fact, there is no—the agreement that the people thought they entered into but didn't, didn't exist, then presumably the terms that would carry on, that would govern the ongoing relationship, the status quo, would be the terms of the prior— That's correct, Your Honor. —expired contract. That's correct. And your clients would have had to take your salary cut, wouldn't they? They would. You got a salary increase under the contract that turned out not to be a contract. That's correct. And you took—naturally, I'm not—I mean, naturally, you took the increment of— The union employees enjoyed a raise from the prior contract. Yes. I mean, the company was free to do what they wanted to, subject to the requirement to maintain the status quo. Which status quo? Well, Your Honor, the prior agreement, the status quo, does not— When you say the prior agreement— The 2009 to 2013 CBA, the one that expired. It's a matter of law that the obligation to arbitrate and the agreement to refrain from striking do not carry over as part of the status quo. The parties never even discussed in those failed negotiations in March 2013 the arbitration provision or the no-strike provision. So for Judge Weinstein to say that the union somehow implicitly agreed to those terms when they were never discussed, it just doesn't—it doesn't jive. I mean, despite the absence of a full CBA, and that was acknowledged by Judge Weinstein and determined numerous times by the NLRB, the parties are said to have somehow reached an agreement solely on topics that were never discussed in negotiations, supposedly agreeing to arbitrate disputes in exchange for a commitment that Charter's employees wouldn't strike. It's nowhere in the record. What evidence, other than the NLRB decision, was there that the parties had not reached an agreement with respect to binding arbitration? It was determined by the NLRB. It was determined time and again by the NLRB. So that's your only—you're only going with the NLRB's decision, nothing from— Well, Your Honor, the decision by Judge Weinstein, based on the evidence of record in the NLRB, that there was an assumption by conduct of an implicit agreement not to strike and to abide by an arbitration procedure, and only that, is an error as a matter of law. First of all, it doesn't deal with the standard, the applicable standard, which is a meeting of the minds on all terms in order for there to be a collective bargaining agreement, number one. And number two, it's not viewing the record in the light most favorable to Local 3 with all ambiguities resolved in their favor. I mean, the union withdrew all the arbitrations and discontinued participating in arbitrations immediately in 2015. The parties never discussed arbitration or the no-strike provision of the agreement in the failed negotiations. The union offered to—requested negotiations, they refused it. They filed charges that were summarily dismissed. Time and time again, the NLRB has determined that there was no agreement after March of 2013, and in the absence of a collective bargaining agreement, there can be no clear and unmistakable waiver, and this is very important. A clear and unmistakable waiver is required in order to waive the right to strike. That cannot be done by adoption by conduct, by an implicit agreement, Your Honors. Thank you. You've reserved a minute for rebuttal. Mr. Kirschbaum? Thank you, Your Honors. May it please the Court. I think the briefs largely speak for themselves. I have a few points of clarification I really must make with regard to Mr. Byington's arguments. First, off the bat, he mentioned three days of striking, and I just want to correct the record. It was four days. Now, Judge Weinstein, with all respect, made a glitch, a mistake, when he said three days. There was no such agreement. The parties never agreed, and I want to quickly point you to the record where we put before Judge Weinstein that there was four days of striking, March 27th, 28th. Excuse me. Why does that matter? It's a quarter of our damages, Your Honor. It's a full day where we couldn't serve our customers adequately, so it was a big deal. Look, they either had a right to strike or they didn't, and if they had a right to strike, they could strike for 20 days or for 24 hours. Absolutely correct, Your Honor. I'm just pointing out for the record that there's four days at stake, and Judge Weinstein should correct that, or it should be corrected, and Judge Weinstein himself said it in multiple places. Record A58, Judge Weinstein's 2017 opinion, said the parties extended the CBA through March 31st. A71, concluding the CBA. You have better things to argue about. Exactly. I just wanted to make it clear, Your Honors, but I will move on. It's in your papers, right? It was mentioned in our papers, but I wanted to point to the record where Judge Weinstein said it. Let me ask you this, just to carry on from the prior argument. Yes. You assert and Judge Weinstein found that the arbitration undertaking continued on as part of the status quo from the agreement that otherwise terminated in 2013. Yes. Correct? Correct. And you also say that the no-strike term also continued on. Is that correct? Yes. As part of the status quo. Correct. And if you're correct, then the union would have to work without a contract forever and can never strike because, after all, part of the status quo is the health benefits, the terms, the salaries from the prior ended contract, as well as the no-strike clause and the arbitration agreement. I mean, what's the union's leverage to get a new agreement? All you have to do is sit on your hands. Respectfully, Your Honor, we're not suggesting they had an open-ended, eternal agreement to not strike and arbitrate. There was an agreement from— Nothing is eternal. The question is, did it last long enough to cover this situation? It lasted through March 31, 2017. That was the four-year CDA that was entered into through the memorandum of agreement. And so there was an agreement for four years to refrain from striking and to arbitrate. And after two years or so, Local 3 decided to withdraw from that undertaking. And it claims now that it did so strictly in response to—or it realized that there was no agreement in response to the ALJ's decision. But that is, in fact, not correct. The ALJ said there was no agreement. I mean, that's why they realized it. But that's not exactly correct, Your Honor. If you look at Record A-140 and 141-142, the ALJ's opinion goes in great detail through the parties' back-and-forth, their communications, where on May 14th, Kevin Smith of Charter provided a draft successor agreement and a red line, and they did not contain references to the rioters or the electrical engineering degree at issue here. The next—or shortly thereafter, July 8th, page A-141, Jordan—that's Local 3's negotiator—responded to Smith by email asking the rioters and the electrical engineering degree. They're not in here. And Kevin Smith responded later that day, stating, on the side letter issue, the negotiations were very clear. We have one bargaining unit. There are no side letters. Later that day, Smith told Jordan by telephone, and this is a quote from the ALJ's decision, quote, the rioters and the electrical engineering degree provision had not been agreed upon during negotiations. Page A-142, the next day, in a meeting in person, Jordan again brought up the rioters' non-inclusion in the proposed CBA. Kevin Smith, quoting from Judge Fish from the ALJ, Smith responded that the rioters were not agreed to during negotiations. He said he would look into it and see if maybe they could be carried over, but he emphasized the MOA had been signed, which did not contain any reference to the rioters, and the parties had reached agreement on terms for a new contract. Yes, so there was a fair agree. There was no meeting of the minds as to whether the rioters would be part of a collective bargaining agreement that would incept in 2013. So if there was no meeting of the minds on that and it was material, then the contract failed. Even though both parties thought they had a contract, they didn't. And that's what the ALJ found. That is apparently what the ALJ and the board concluded. It's apparent because that's what it says. Respectfully, Your Honor, that's not the standard that federal courts have applied. And the cases we've cited in our brief, the parties have discussed them, have found, even though the parties failed to reach agreement on a certain issue, which could be material by the standards of the board, that does not preclude them from living under a binding agreement to arbitrate disputes. There were multiple cases where they realized after the fact. My adversaries pointed to one case, Bobby Brooks' case, where the parties agreed to disagree. They tabled an issue. But the other cases we've cited, that did not happen. The parties woke up and realized after they had... Your view is that the incepting in 2013, the entire agreement that had been negotiated with the open issue of whether they were riders or not, continued in effect. That agreement was from 2013 through March 31st, 2017. Yes, Your Honor. So there are multiple cases that state... Even though there... But... I mean... Even though there was a dispute as to the riders... Yes? Then were the riders in or were they out? Well, in fact, the Charter has always abided by the riders. It has honored them in abundance of caution. Yes. We submit they're not. The parties hadn't agreed on those. We had clearly stated during the post-negotiation period when the parties were negotiating a written agreement to memorialize the full agreement, we said they're not in there. But we honored them. So they got the benefit of their bargain even as they see it. They can't claim they didn't get that benefit. But there are multiple cases that state... In the Eastern Airlines case cited by my adversary, the parties failed to agree. They signed a four-page handwritten document. It clearly did not cover every provision that could cover their agreement, their working relationship. They failed to agree on certain rates of pay. I can't think of a more material issue in this world for a labor agreement than rates of pay. It was not agreed to, in fact. It was discovered later they hadn't agreed on that. In Mack Truck's case, they discovered later that pension benefits, retirement benefits had not been reached, agreements had not been reached. That's pretty material. The lower court ruled it's not material for my purposes. It was affirmed by the circuit, by the Third Circuit. This case in Washington Heights... Were those cases in which an ALJ held that there was no agreement? Those were not cases where an ALJ held that. But that's the kind of case that's where we are, isn't it? True, Your Honor, but I would submit... Just following up on that question, you, your client, participated in the proceedings before the ALJ. I did. We are not trying to avoid... We've been accused of trying to dodge an appeal of that case. We submit. The ALJ ruled... I'm not accusing you of anything. I'm trying to figure out... My adversary. You and I are having this discussion. Yes. What is the... What, in your view, in your client's view, is the effect of that particular finding, and how do we analyze that effect? If I were in front of Your Honor saying, please, tell Judge Weinstein to issue a writ of mandamus, that they should have to sign the agreement as written without the writers, that would be precluded. If I was here saying, we want a declaratory judgment that they committed an unfair labor practice by refusing to sign that agreement without the writers, that would be precluded. That's not what we're doing in this litigation. We are trying to enforce the arbitration agreement, the deal that was reached, and that both parties abided by, by two years. Let's go back to my question, which you haven't answered yet. What is the effect of the ALJ's determination that there is no agreement? Respectfully, Your Honor, for present purposes, there is no effect of that. The parties had an agreement from 2013 to 2017 under the standards, the LMRA Section 301 standards that govern this court. You're saying it has no effect because it's wrong. I think it's right for the purposes of unfair labor practice. You're saying it has no effect because it's wrong for these purposes. Correct. I do, Your Honor. Yes. I think the ALJ applied a different standard. The case law is pretty clear. Under what circumstances would that determination by the ALJ have an effect? I mean, it's not nugatory. Let's go to the ALJ and get a decision, and nobody does anything about it. I mean, this is at the heart of what you guys do for a living. Again, Your Honor, in unfair labor practice world, in front of the NLRB, parties attempt to have one party's actions declared unfair, an unfair labor practice, promise not to do it again, sign that agreement, put up a notice saying you won't refuse to sign an agreement that you entered into. We're not seeking to do that. For purposes of federal courts enforcing contract, which is what's at stake here, the NLRB's positions and its view doesn't take. You're saying that arbitration is different from everything else. I'm saying that contract formation under the LMRA is different from contract formation as viewed by the NLRB under the NLRA. And I would point out that in Washington Heights and the Trans-U case, the Sixth Circuit case, both cases the NLRB's region refused to issue an unfair labor practice charge. It went beyond what happened here. It said this isn't even a closed call. One party refused to sign an agreement that they claimed was reached. We're not even going to accuse them of an unfair labor practice. It's so clearly they hadn't had a meeting of the mind. It's not even worth pursuing here. The court, nevertheless, the federal court said, yeah, they had a meeting of the mind on what counts on material issues, including grievance arbitration clause, and that's enforceable. So there's very different standards. And as much as my adversary says it's the same standard, in other words, they both use the term material. All material terms have to be agreed upon. But the federal cases, there were seemingly material terms by the NLRB standards, retirement benefits, rates of pay. There are all kinds of substantive issues that were not agreed upon, and yet. What is the consequence of the ALJ ruling in terms of what the parties are required to do or to refrain from doing? Well, at this point, Your Honor, the agreement would have expired anyway on March 31, 2017. At the time it was issued. The upshot was nothing because the ALJ said there was no agreement on the riders. Therefore, Local 3 did not have to sign the riderless agreement. The union didn't have to sign it?  And Local 3, for its part, brought an unfair labor practice charge against charters saying What was the effect of that? I mean, upon a poem, it had an impact. What was the effect of that on the parties? What is it the parties could do or not do as a result of the ALJ's ruling? You seem to be saying nothing, in which case I don't even know why you were there. Your Honor, it's a very valid question, but part of the problem here, which we I don't know whether it's valid or not. It's the question to which I do not know the answer, and presumably you do. I would respectfully say, with all due respect to the NLRB, the remedies are limited. It's true. They cannot order money damages. They can only order and join you to engage in conduct or not. So they could have ordered Local 3 to sign that agreement. You're saying the practical effect on the behavior of the parties of the ALJ's ruling was that you were required to negotiate in good faith a new CBA. I mean, I don't know. You tell me. I mean, you litigated this. What were the parties required to do? What was the effect of the ALJ's ruling? The effect was that the status quo precedent continued. And in theory, the parties would have had to negotiate in good faith, not unfairly, a new contract. So that is true. But that does not... All right, so the status quo continued. Except, for present purposes, we paid the new rates of pay, as you pointed out. We were paying better benefits. We were abiding by a new collective bargaining agreement. Your adversary says you didn't have to. You just did. Because you're nice. That's the first time he's ever called us nice, and that's not... I don't think he used the word nice. No, he didn't say nice. In so many words. He didn't say that. Help me with this, because this, at least, is important to my figuring this out. Back... What was it... Just reprise this for us, please. What was it that brought about the proceeding before the ALJ? What initiated that? And let me suggest the answer that I understand, and you can say, no, you're wrong. It's this. I understand that somebody brought an unfair labor practice because they were wrestling back and forth and didn't reach an agreement, thought they had an agreement, and they wanted the ALJ to say, yes, that's an unfair labor practice, or no, it's not, and the ALJ didn't do that. Correct. I've got it so far? Yes. All right. But in so doing, the ALJ said, there isn't an agreement, and therefore, what I have the authority to do, which is say, yes, you have an unfair labor practice, I'm going to tell you to do something about it, or no, you don't, there isn't an unfair labor practice, go home. The ALJ didn't do any of those because there was no agreement on which he, she could find an unfair labor practice. I would say, in the view of the ALJ, that is true, Your Honor. I would also respectfully say the ALJ did not have to reach such an extreme conclusion. All they had to reach, the conclusion was, they didn't agree on the riders, Local 3 was excused from not signing the riderless contract. He did not have to throw out the baby with the bathwater and say they had no contract on anything at all, ever, which is effectively what the ALJ said and the NLRB confirmed. And I would note, it's in the record as well, a separate ALJ viewed it otherwise and said, no, no, they had at least a limited agreement. We're not bound by that finding because we're not bound by things, as we have said from time to time, that the NLRB determines. Correct. That's your point. Yes, Your Honor. Okay. Thank you. Thank you, Your Honors. Mr. Kirshbaum, if you have a different take on the conversation we had, I would appreciate hearing it. Well, first of all, the three days versus four days is dealt with in our reply brief with note two. It's dealt with. In terms of the discussion here, it's clear that what's going on here is that charter is basically, and the Court has allowed, a de facto appeal of the NLRB decision. The NLRB determined there was no contract and, quite frankly, the standard for requiring a party to execute a collective bargaining agreement requires that there have been – What about the jurisprudence cited to us by your adversary that says you don't have to have all of these pieces in order to be held to an obligation to arbitrate and not strike? Charter doesn't really explain anywhere in the papers or hasn't explained here any real – what the actual distinction between the NLRB, or hasn't cited any cases at least, what the NLRB's formation of a contract standard is and what it is under Section 301 of the LMRA. It's a meeting of the minds on all material terms. That's what it is. And what they're trying to do is they're trying to appeal the NLRB's determination that the – what they call the trivial, insignificant provisions of the contract that the ALJ found were material and were absent in terms of a meeting of the mind. They're trying to appeal that indirectly. Basically, this is what the judge did here is a de facto appeal. They haven't appealed that NLRB decision. They still can. They haven't. And that's required under Section 10F of the NLRA, 29 U.S.C. 160F. It's what the procedure – the proper procedure under Rule 15 of the Federal Rules of Appellate Procedure. They haven't done it. And there is no distinction between a contract formation, all material terms, under 301 and under the NLRA. And quite frankly – If, as your adversary, I think, argues, what the ALJ held is that it was not an unfair labor practice for the union to refuse to sign an agreement that did not contain the riders, right? That's not what the ALJ held. The ALJ held that the riders were a material term of the party's agreement. The union did not commit an unfair labor practice by failing – by refusing to execute an agreement. I mean, honestly, that's exactly what I said. Well, but the judge said that there was no meeting of the minds regarding material terms and no contract. No, with respect to – the judge said there's no contract because there is no – It's correct. And they're trying to appeal that decision here now, before Judge Weinstein, without taking an actual appeal. And in the case cited by them, the Messenger v. Building Contractors Association case, that's an SDNY case in 1989, the court there specifically recognized that a charge like this, a failure to execute an agreed-upon agreement, a determination by the NLRB will have preclusive effect on a 301 case. Am I correct that your argument boiled down is that since it was not an unfair labor practice for the union to refuse to sign an agreement that did not contain the riders, the unions continuing thereafter to abide by the status quo under the contract that had expired in 2013 did not continue the no-strike obligation from that contract, and did not continue the arbitration agreement from that contract? Well, to the extent that there was a mistake. There was a mistaken understanding. There was no meeting of the minds between the parties. There was no contract. I don't understand what you're saying. There was no contract reached. And with the status quo, the no-strike obligation – The agreement that expired in 2013. Am I correct? Correct. That's your view. Correct. And there is no carryover of the bonding arbitration procedures or the obligation to abide by a no-strike clause under the status quo. And that's settled law, right? Say again? That's settled law. That's settled law, Your Honor. There is no contract in effect. All right? And the parties are free to collectively bargain. Then the union can strike. And the employer has no obligation to undergo bonding arbitration for employee grievances. Yes, Your Honor. And counsel's suggestion that all they're trying to do is to enforce an agreement to arbitrate and an agreement not to strike, it was never discussed. Never once discussed in the negotiations of 2013. It's a matter of record undisputed, Your Honor. Thank you. Thank you, Mr. Byington. Thank you, Mr. Kirschbaum.  Thank you, Your Honor.